## Case No. 16,342b.

UNITED STATES v. SMITH.

UNITED STATES v. OGDEN.

[MS.]

Circuit Court, D. New York. July, 1806.

CRIMINAL LAW—ACT JUNE 5, 1794—MILITARY EXPEDITION AGAINST NATION AT PEACE—JURY.

[1. Following U. S. v. Smith, Case No. 16,-342a.]

[2. A juror who has sat on the trial of a person indicted for the same offence as defendant is not competent.]

[Trial of Samuel G. Ogden on indictment for a misdemeanor in beginning, setting on foot, and providing the means for a military expedition in the city of New York, to be carried on from thence against the territory of Spain in South America, at a time when the United States and Spain were at peace. A plea to the indictment on the ground that it was founded on illegal evidence was overruled (see Case No. 16,341a), and a motion for attachments against absent witnesses and for a continuance was also denied (see Case No. 16,342). On the drawing of the jury, one juror asked to be excused, on the ground that he had been a juror on the trial of William S. Smith, indicted for the same offence, whereupon the court excused him as not being a competent juror, notwithstanding the objections of defendant's counsel. Substantially the same evidence was introduced and offered in this case as in the case of U. S. v. Smith, Case No. 16,342a.]

Nathan Sandford, Dist. Atty., and Pierpont Edwards, for the United States.

Washington Morton, Cadwallader D. Colden, Josiah Ogden Hoffman, Thomas Addis Emmett, and Richard Harison, for defendant.

## Case No. 16,343.

UNITED STATES v. SMITH.

[2 Wash. C. C. 310.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1808.

## Case No. 16,344.

UNITED STATES v. SMITH et al.

[3 Wash. C. C. 78.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1811.

SEAMEN—ENDEAVOR TO MAKE REVOLT—CONFINEMENT OF MASTER—ADMIRALTY JURISDICTION.

1. Indictment against the defendants, part of the crew of the vessel. First count, for confining the master; and the second count, for endeavouring to make a revolt in the ship; both charged to have been committed on the high seas.

2. It seems, that to constitute the offence of endeavouring to make a revolt, the attack on

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

the master should be accompanied by some evidence, indicating, on the part of the assailants, an intention to take possession of the vessel.

3. Any confinement of the master, whether by depriving him of the use of his limbs, or by shutting him in the cabin, or, by intimidation, preventing him from the free use of every part of the vessel, amounts to a confinement in contemplation of law.

[Cited in U. S. v. Smith, Case No. 16,345; U. S. v. Peterson, Id. 16,037; U. S. v. Huff, 13 Fed. 640.]

4. The offences charged against the defendants, were committed whilst the vessel was lying in the river, about one and a half miles below St. Ubes, and within the bar, the river being about one mile and a half wide at the mouth; and the court were of opinion, that they had jurisdiction of the case.

[See note at end of case.]

The indictment is founded on the 12th section of the act of congress, for the punishment of certain crimes, passed April 30, 1790 [1 Stat. 112], and contains two counts; the first for confining the master, and the second for endeavouring to make a revolt in the ship; both of which are charged to have been committed on the high seas. The evidence in support of the indictment, was, that whilst this vessel was lying in the river, about one and a half miles below St. Ubes, and within the bar, the river being about a mile and a half wide at the mouth, the defendant, Smith, who in the course of the day had been struck by the captain, laid hold of him, and cursing him, observed, "Now we are ready for you." The captain pushed him away, and ordered him forward; upon which Smith struck the captain, and they immediately closed with each other, when Smith cried out to the hands who were below to come up, for that now was their time. Upon which, the other two defendants ran forward to his assistance, one of them armed with an iron shovel, and the other with a piece of wood, and the one with the shovel struck the captain; after struggling for some time, the captain got clear from them, and got on the other side of the cabin, and ordered the men to go on the quarter deck, which they did, but still continued to abuse him, and threatened, if he came on the main deck, they would massacre him. After keeping the quarter deck for some time, and fearing to risk himself on the main deck in order to get into the boat, he got over the railing of the quarter deck, jumped into the boat, in which he went on shore, and having got a guard of soldiers, he returned to the vessel, where the defendants were armed and prepared to receive them; having during his absence declared, that they would resist the captain if he brought other masters of vessels to assist him, but that they would yield to soldiers, should they come with him; and that should he bring sailors with him, they expected that they would join them. They were, however, quelled and disarmed by the soldiers.

The counsel for the defendants, requested that the point, whether this indictment could be supported, the offence having been committed in a river, and not on the high seas, might be reserved. THE COURT directed the jury, if they should think the defendants guilty, to find them so, subject to the opinion of the court on a point reserved.

The evidence on the part of the defendants, was, to a great degree, contradictory to that given in support of the indictment, giving it rather the appearance of a battery by Smith alone, in return for a stroke first given by the captain. As to the threat to the captain, if he came on the main deck, the testimony was equally at variance with that given against the defendants.

WASHINGTON, Circuit Justice (charging jury). As to the second count, for endeavouring to make a revolt, the court feels some difficulty; but are inclined to think, that the attack upon the master, should be accompanied by some evidence, indicating, on the part of the assailants, an intention to take possession of the vessel. There is less doubt as to the law upon the first count. Any confinement, whether by depriving the master of the use of his limbs, or by shutting him up in the cabin, or by intimidation, preventing him from the free use of every part of the vessel, amounts to a confinement in contemplation of law. In this case, the master, as he states, was prevented, by an apprehension that the defendants would execute their threats, in case he went on the main deck, from getting into the boat from thence, and thought it necessary for his personal safety, to endeavour to get away from the vessel; and in order to do so, was compelled to get over the railing of the quarter deck, and thence into the boat. If this evidence is believed by the jury, the defendants are clearly guilty under the first count. If the evidence on the other side is believed, they cannot be convicted upon either count of this indictment.

The jury found the defendants guilty—subject to the opinion of the court, on the point reserved.

NOTE. Upon the point reserved, the court was of opinion, that the case is within the jurisdiction of the court. For, if rivers, havens, &c., be not parts of the high seas, still, the 12th section, where it speaks of the high sea, is confined to manslaughter, and does not extend to this offence. Sentence passed on the defendants.